## Illinois Central Railroad Company v. William Truesdell.

1.  RAILROADS—*Liability for Injury Caused by Defective Approach
to Crossings.*—A railroad company is liable for injuries sustained by
parties while in the exercise of reasonable care, by reason of the defect-
ive condition of an approach to a railroad crossing, however distant
from the railroad track and however disconnected from the dangers
incident to the operation of trains, provided the defect is within the
right of way.

2.  SAME—*Approaches to Crossings.*—What constitutes the approaches
to a railroad track must be determined from what is reasonable in each
case and from what is actually us.d as such by the railroad company
and acquiesced in by the public.    They may extend to the limits of the
right of way, or a few feet from the track may be sufficient.

3.  SAME—*Liability for Condition of Right of Way at Intersection
with Public Highway.*—A railroad company is not required to keep all
of the traveled portion of a highway outside of its tracks, but within its
right of way, safe and free from obstructions, but only such part thereof
as may be included within the approaches to its tracks.

4.  INSTRUCTIONS—*Should not Assume Facts in Dispute.*—An instruc-
tion should not assume the existence of facts which are in dispute.

5.  NEW TRIALS—*On Account of Newly Discovered Evidence.*—A new
trial should not be granted on account of newly discovered evidence
unless it appears that such evidence is conclusive in its character as re-
gards some material point involved in the case, and not merely cumu-
lative.

**Trespass on the Case,** for personal injuries.    Appeal from the Circuit
Court of Iroquois County; the Hon. THOMAS F. TIPTON, Judge, presid-
ing.    Heard in this court at the May term, 1896.    Reversed and re-
manded.    Opinion filed December 9, 1896.

C. V. GWIN, FREE P. MORRIS and FRANK L. HOOPER, attor-
neys for appellant; JAMES FENTRESS, of counsel.

C. H. PAYSON and NELLY B. KESSLER, attorneys for appellee.

MR. PRESIDING JUSTICE HARKER DELIVERED THE OPINION OF THE COURT.

This was an action on the case to recover for injuries sustained by appellee in being thrown from a wagon while crossing over appellant's railroad and right of way at their intersection with a public wagon way.

The negligence charged was in allowing a stake some ten inches above the ground to remain upon the approach to the crossing over the railroad, against which appellee's wagon wheel ran, thereby throwing him out of his wagon.

There was a recovery for $3,000. The action was based upon the following section of the statute :

Sec. 8. Hereafter, at all railroad crossings of highways and streets in this State, the several railroad corporations in this State shall construct and maintain said crossings and the approaches thereto within their respective rights of way, so that at all times they shall be safe as to persons and property.

The evidence in the record shows that the injury complained of occurred in the following manner :

On the evening of the first of October, 1894, while appellee, in company with his wife and a Mr. Ball, was riding in a wagon drawn by a spirited team, he was thrown from his wagon by reason of running against a post or stake standing about ten inches above the surface of the ground in the highway upon appellant's right of way. The highway was but little used and was in rather bad repair. The width of the right of way is 200 feet and that of the highway four rods.

The stake in question stands about fifty feet east of the railroad track, and about midway of the track and the east line of the right of way. There is a rise from the natural surface of the ground on the west side to the track of about four feet, and from nine to ten feet on the east side. The immediate approach from the ground to the top of the rail

is quite abrupt on either side. The evidence does not clearly show whether the stake was upon what could be properly considered the approach to the crossing, but was within the usually traveled part of the highway, and protruded from ground where it was slightly raised above the natural surface.

In one of the briefs filed by appellant it is very ingeniously argued that no right of action upon the above quoted section can be maintained against a railroad company to recover for injuries sustained by reason of the defective condition of the highway approach to the railroad crossing, unless it appear that the injury was occasioned by or in some way connected with the dangers incident to the operation of trains.

It is urged with great vigor that if it be conceded that appellee was injured by reason of a defective condition of the approach to the crossing, then as the evidence shows that as the defect consisted of a protruding stake some fifty feet distant from the railroad track, and the injury was not in any way connected with dangers incident to the operation of trains crossing the highway, there can be no recovery.

There is nothing in the act of which the above quoted section is a part which warrants an interpretation that the sole purpose of the section is limited to an exercise of the police power of the State to secure the safety of persons and property from the dangers resulting from the operation of trains over the highway crossing. The words appearing in the latter part of the section—" shall construct and maintain said crossings and approaches within their respective rights of way, *so that at all times they shall be safe as to persons and property* "—would seem to preclude any such interpretation. We are of the opinion that a railroad company is liable for all injuries sustained by parties, while in the exercise of reasonable care, by reason of the defective condition of an approach to a railroad crossing, however distant from the track, however disconnected from the dangers incident to the operation of trains, provided the defect is

within the right of way. In that view we think we are sustained by what is said in the opinion in the following cases: City of Bloomington v. I. C. R. R. Co., 154 Ill. 539; C. & N. W. Ry. Co. v. City of Chicago, 140 Ill. 309.

It is contended that the stake against which appellee drove his wagon is not situated upon the approach.

In the trial of such cases what constitutes the approach may often become the serious question of dispute. We are not inclined to the view that the approach within the meaning of the statute includes all that portion of the usually traveled part of the highway extending from the outside limit of the right of way to the track. That it does not necessarily include the entire width of the highway is held in City of Bloomington v. I. C. R. R. Co., *supra*. The length of the approach must be determined from what is reasonable in each case, and from what is actually used as such by the railroad company and acquiesced in by the public. It might extend to the limit of the right of way, or a few feet from the track might be sufficient.

In case of a track situated upon a dump many feet above the natural surface the approach would be necessarily longer than in case of a track situated upon or near the level of the natural surface. The jury, of course, must determine that question from the lights which the evidence furnishes.

We see no force in the contention that appellee was guilty of contributory negligence.

It is claimed that the damages are excessive. No evidence of a serious and permanent injury manifested themselves until a number of months after the injury. Immediately after being thrown from the wagon, appellee was able to walk, and started in pursuit of his runaway team. He walked a quarter of a mile, when he was met by his wife and Ball driving back to meet him. He drove to Onarga the next day, was examined by his physician, who detected a slight injury to his shoulder, to the calf of his right leg and hip. The physician directed him to use some liniment and advised rest for a short time. He evidently

did not consider himself much injured at the time, for within a few days he was about at his work, doing chores and driving about from place to place over the country. In the month of February following the injury in October, he passed an examination for membership and insurance in the Modern Woodmen of America, answering that he was in sound bodily health, and obtained a certificate to the same effect from the physician who examined him on the day after he received his injury. In the month of March following he was at one time engaged in hauling, lifting and moving heavy bridge material. In this kind of work he seems, from the evidence, to have worked as vigorously as other of the men who were engaged with him, and made no complaint of being lame or injured. Late in the spring or early in the summer his condition became quite serious, however. There was a general derangement of the system. He became lame, suffered from an affection of the sciatic nerve, it was thought by his physician, and was compelled to resort to the use of crutches. The evidence tends to show that his physical condition at the time of the trial was very bad, and if caused by the injury complained of, and the liability of appellant was established by the evidence, no court would feel warranted in setting aside the verdict solely upon the ground that the damages awarded were' excessive.

We see nothing seriously wrong with the rulings of the court upon the admission of testimony.

The court gave to the jury in behalf of appellee the following instruction:

"1. You are instructed by the court that the question as to negligence in cases of this kind is a question purely of fact, to be determined by you from all the evidence in the case. It is for you to say, after a careful consideration of all the evidence in this case, whether or not the defendant suffered or permitted the post to be and remain where the evidence shows it did stand, and whether or not it was negligence for the defendant to permit the post in question to remain in the place it was. It is for you to say, after a

careful consideration of all the evidence in this case, whether or not the plaintiff in passing along and over said crossing used such care and caution as to his own safety as the known danger attending the passing of that point required. And if, from all the evidence, you find that the defendant was negligent in permitting said post to be and remain there, and further find that the plaintiff was not guilty of any negligence in attempting to pass it, and further find that the plaintiff was injured as alleged in the declaration, then in such case, upon this question of negligence, the law is with the plaintiff."

This instruction is vicious, because it made the railroad company liable regardless of whether the post was on an approach. It tells the jury to determine the negligence of the company from evidence as to whether the company permitted the post to remain where it was. If the post was not on the approach there could be no recovery for an injury occasioned by running onto it.

The second instruction given for appellee is as follows : " You are instructed by the court that if you find from all the evidence in this case that the plaintiff, knowing the dangerous character of the crossing in question, used all and every possible care and caution for his safety at the time in question, and that he received the injury complained of as alleged in the declaration, and without any fault or negligence on his part, then, upon the question of negligence in this case, the law is with the plaintiff, notwithstanding the fact that the dangerous condition of said crossing was known to the plaintiff."

The vice of this instruction is that it assumes that the character of the crossing in question was dangerous. The third instruction given for appellee was bad, because it told the jury that if they believed from the evidence that the railroad company permitted the post to remain near the center of the traveled portion of the highway within and where it crossed the right of way, so as to render it dangerous to persons wanting to pass over the approach, etc., it would be liable. From the instruction the jury would under-

stand that it was the duty of the railroad company to keep the traveled portion of the highway over the entire right of way safe and free from obstructions. As held by us, that would not be necessary unless the conditions were such as to require the approach to extend to the boundary limit of the right of way.

Appellant moved for a new trial upon the ground of newly discovered evidence, and in support thereof presented the affidavit of Free P. Morris, one of its attorneys in the case. The affidavit set up that after the trial had begun it was learned for the first time that appellee had in February, 1895, been examined as to his physical condition with a view to membership and insurance in the Modern Woodmen of America; that in his sworn application for membership, and in the examination subsequently had, appellee stated, at the time, that he was in sound bodily health and free from disease; that such statements were in writing, and in possession of the head physician of the organization at Vandalia, and that appellant did not know that such statements had been made until after the conclusion of the trial. Such evidence would be quite material, and, if heard, would doubtless affect the matter of damages. It is not conclusive, however. Before a court is warranted in setting aside a verdict upon the ground of newly discovered evidence alone, it must be conclusive in its character and not cumulative. We do not mean to be understood as holding that it should be conclusive as to right of recovery. If it was conclusive upon the subject of whether the injury was permanent in a case of this character, and where the damages awarded were so heavy that they could be sustained only upon the theory that the injury was permanent, then the newly discovered evidence would be sufficient. But the newly discovered evidence set up in the affidavit is not conclusive upon that question. Had it been shown upon the trial that such statements were made by appellee and supported by the report of the examining physician, still, if the other proof showed clearly that appellee was permanently injured in the accident at the highway crossing, the jury would be justified in finding the injury was permanent.

In view of the fact that the evidence does not clearly show that the post in question was upon the approach to the crossing, we are of the opinion that the error of the court, in giving instructions as above indicated, are so serious as to require a reversal of the judgment and a remanding of the case for another trial.   Reversed and remanded.